CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

CHRISTINE OLSON
REBECCA A. PERLMUTTER
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Email:    Christine.Olson2@usdoj.gov
              Rebecca.Perlmutter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAG. NO. 23-0114 KJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MEMORANDUM IN SUPPORT |
| vs. | ) | OF MOTION TO DETAIN |
| | ) | DEFENDANT DWAYNE YUEN; |
| | ) | CERTIFICATE OF SERVICE |
| DWAYNE YUEN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF MOTION
### TO DETAIN DEFENDANT DWAYNE YUEN

<u>TABLE OF CONTENTS</u>

I.    BACKGROUND ..................................................................................3

II.   APPLICABLE LAW ..........................................................................4

III.  ARGUMENT.......................................................................................5

      A. YUEN is a Serious Danger to the Community and Prior Victims........5

          i.   The Nature and Circumstances of the Charged Offense Favors

               Detention ...................................................................................5

          ii.  The Weight of the Evidence Favors Detention..........................8

          iii. YUEN's History and Characteristics Favor Detention..............8

          iv.  The Nature and Seriousness of the Danger to the Community

               and YUEN's Former Victims Favors Detention ......................12

      B. YUEN is a Flight Risk .......................................................................17

          i.   YUEN Faces Substantial Time in Prison..................................17

IV.   CONCLUSION..................................................................................17

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Pages</u>

*United States v. Aitken*,
   898 F.2d 104 (9th Cir. 1990) ................................................................... 4

*United States v. Hir*,
   517 F.3d 1081 (2008) ................................................................... 8, 14

*United States v. Salerno*,
   481 U.S. 739 (1987) ................................................................... 13

*United States v. Tortora*,
   922 F.2d 880 (1st Cir.1990) ................................................................... 13

*United States v. Turman, No. CR 18-51-M-DLC*,
   2018 WL 4690803 (D. Mont. Sept. 28, 2018) ................................................. 12

18 U.S.C. § 3142 ................................................................... 4, 5

The United States of America respectfully submits this memorandum in support of its motion to detain the defendant, DWAYNE YUEN, pending trial. The Court should detain YUEN because there are no conditions that can adequately ensure: (1) the safety of the community and his prior victims; or (2) that he will appear for future court proceedings.

Most significantly, YUEN poses an extremely serious danger to members of the community, including those he has previously victimized.    He has been a youth basketball coach in and around Oahu since at least 2003.    He has also been a teacher at local elementary, middle and high schools in the Honolulu area until 2018, when he resigned as a result of the Department of Education opening an investigation into allegations of misconduct involving minors.    For many years, he has taken advantage of his position of trust and authority over minors in the community and used that power differential to groom and abuse vulnerable children in his care for his own sexual gratification.

YUEN is not simply a passive collector of child pornography.    Rather, he is a prolific and aggressive child predator who has repeatedly targeted minors that he knows well.    He also has a history of relentlessly and obsessively contacting, harassing, and threatening his victims.    If he were released, no condition could adequately monitor his online or telephonic presence to prevent access and contact

2

with children and/or the victims of his conduct.

Second, YUEN is a flight risk.   He faces up to 10 years in prison for the current charge.   Yuen is also aware the FBI's investigation into his conduct is ongoing.   The penalty he presently faces and the unknown nature of the continuing investigation, particularly given the stigma associated with offenses against children, provides a powerful incentive for YUEN to leave the jurisdiction.

For these reasons, discussed more fully below, the United States respectfully requests that this Court detain defendant YUEN without bail pending trial.

## I.    BACKGROUND

On February 1, 2023, YUEN was charged by Complaint with possession of child pornography.   On February 2, 2023, YUEN was arrested in Hawaii and the Complaint was subsequently unsealed with respect to conduct from in or around 2016 through 2020 involving one minor victim ("MV1").

Law enforcement was previously made aware of several civil lawsuits involving five victims, filed in the State of Hawaii Circuit Court for the First Judicial Circuit, against YUEN and a private school on Oahu alleging an ongoing pattern of sexual abuse/assault and sexual misconduct by YUEN from approximately 2004 – 2008 that involved, amongst other actions, sexual grooming and repeated inappropriate sexual communications between an YUEN and multiple

3

minor females, as well as the sexual assault of a minor.[1]   FBI Honolulu has

interviewed several of the victims contained in these lawsuits to gather evidence,

corroborate their statements, and obtain information regarding other possible

victims.

## II.    APPLICABLE LAW

Under the Bail Reform Act, a court must detain a defendant pending trial if

"no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of any other person and the community."

18 U.S.C. § 3142(e).   The United States carries the burden of persuasion by clear

and convincing evidence regarding danger to the community and by the lesser

standard of a preponderance of the evidence regarding risk of flight.   *See* 18

U.S.C. § 3142(f)(2)(B); *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).

Both are satisfied here.

Section 3142(g) lists the factors that a court must consider in determining

---

[1]For purposes of this memorandum, the terms "sexual assault" or "assault" are being utilized to remain consistent with the language used in the referenced civil complaints.   The terms are not being used to make a legal judgment regarding any type of State offenses covered by the Hawaii Revised Statutes, rather the terms refer in substance to hands-on sexual contact between YUEN and the identified victim listed herein, to include such conduct as groping, sexual intercourse, and/or digital penetration.

whether to detain a defendant:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance [or] firearm . . . ;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including—

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

## III.    ARGUMENT

### A. YUEN is a Serious Danger to the Community and Prior Victims.

The factors set forth in Section 3142(g) weigh strongly in favor of

YUEN's pretrial detention on the grounds of dangerousness.

### i.  *The Nature and Circumstances of the Charged Offense Favors Detention.*

The nature and circumstances of the offense charged are exceptionally

serious and so favor detention.   Although YUEN presently is charged only with

5

possession of child pornography, the context of his criminal behavior is significant. YUEN is a prolific and long-term sexual predator of minors.   The complaint affidavit detailed some of the underlying conduct involving YUEN and MV1, including sexual grooming, provision of gifts and payments, repeated requests for sexual favors and sexual activity, transmitting sexually explicit images of himself to MV1, and repeated solicitation of sexually explicit images and videos from MV1.   In 2022, law enforcement also recovered multiple sexually explicit images and screenshots (from a live video chat) of MV1 from YUEN's iCloud account, saved in a user created folder under MV1's first initial.

    In addition, MV1 described to law enforcement how YUEN repeatedly and persistently contacted her.   For example, MV1 stated that every time she did not answer YUEN's texts or calls, he would "keep blowing up my phone."   YUEN would also come to her school to provide her meals once or twice a week and began attending her high school basketball games.   He would take her and other high school girls out to dinner after the games.   MV1 said during her senior year of high school, when she was a minor, the SUBJECT began to give her gifts such as sports bras, spandex, shoes, dinners and lunch.   The selected text message excerpts included in **EXHIBIT A** were selected from over 550 pages of authenticated messages between MV1 and YUEN that were provided to law enforcement.

During an interview with law enforcement, MV1 stated that one of the payments YUEN sent her may have been for a specific photograph YUEN asked her to take wearing a Lululemon thong he had purchased for her.   Law enforcement has identified an image, found in YUEN's iCloud account, of MV1 wearing a pink thong.   MV1 confirmed she sent YUEN this image at his request. MV1 described how YUEN had delivered the thong to MV1 as a gift when he brought her lunch at school.   MV1 stated that YUEN gave her the underwear and when she asked him why he bought her this particular underwear, YUEN informed her that other girls he knew told him that this particular thong was very comfortable.

MV1 further explained that she sent Yuen sexually explicit images of herself and engaged in a live video chat because he would relentlessly ask her for images and video.   MV1 stated, "he asked for very repetitive stuffs, and I just gave in for the money."   MV1 stated that she thought to herself, "maybe if I send him one more he'll stop asking me."

MV1 also described a solo trip with YUEN when she was in high school and a minor.   She and YUEN traveled from Oahu to the Big Island to watch the State Basketball Championships.   During the trip, she and YUEN stayed in the same room, but on separate beds.   However, MV1 explained that YUEN asked if he could "cuddle" with MV1 in the same bed, which she declined.

7

### ii.   The Weight of the Evidence Favors Detention.

The weight of the evidence against YUEN is strong.   Law enforcement has copies of, inter alia: (1) sexually explicit communications between MV1 and YUEN when she was a minor; (2) multiple sexually explicit images of MV1 found on YUEN's iCloud account; (3) copies of electronic financial transactions showing that YUEN sent MV1 money on multiple occasions; and (4) MV1's corroboration of events.

Although this prong is the "least important" factor, the Court must "consider the evidence in terms of the likelihood that [YUEN] will pose a danger" as well as whether the evidence is strong and the penalties sufficient to cause him to flee. *United States v. Hir*, 517 F.3d 1081, 1090 (2008).

### iii.   YUEN's History and Characteristics Favor Detention.

There is strong evidence to suggest that YUEN has been grooming and sexually exploiting the children he coaches since the early 2000s.   His criminal conduct was not opportunistic and he was not someone who just downloaded child pornography online and kept images of unknown anonymous minors in a collection.   Rather, his crime was targeted towards a preferential population of young, teenage girls and executed as part of a years-long premeditated scheme to gain access to these vulnerable children under his care and authority so he could use them for his own sexual gratification.   Over the years, YUEN perfected his

8

skills at grooming, coercing and gaining the trust of these children, as evidenced by YUEN's engagement with MV1.

Law enforcement in Honolulu has reviewed the civil lawsuits filed against YUEN for sexual abuse/assault and battery by several victims whom YUEN had coached while they were minors.   The lawsuits are in the public record and thus the detailed allegations are publicly available. The allegations against YUEN described a pattern and practice of sexual grooming, inappropriate sexual communications and contact, and ultimately sexual contact with, and assault of, minor females at the hands of the SUBJECT from approximately 2004-2006.   The civil lawsuits alleged that the SUBJECT "groomed" these minor females by, among other things, cultivating a system of gift giving to certain players that he had coached that included buying food and other gifts for them such as shoes and clothing.   In August 2021, the civil lawsuits were settled.   The terms of the settlement are not known, nor were they disclosed, to law enforcement.

Although these are allegations and not criminal convictions, the allegations from almost twenty years ago are strikingly similar to the facts in the current charge that involved conduct as recent as December 2020.   Significant to the Court's consideration of detention, the sexual predation of MV1 occurred *after* the civil lawsuits were filed with the shocking allegations and *continued on* through the course of the civil lawsuits when YUEN knew he was under a microscope and

9

was on notice of the dangers of his conduct and the allegations of contact with minors.   Nevertheless, he continued to engage with MV1 to seek sexually explicit images, videos, and other sexual activity.   Furthermore, MV1 told YUEN that she could not have sexual contact with him, despite his requests, because she was "underage."   YUEN responded to her that the legal age of consent in Hawaii for minors for sexual intercourse at 16 years.   *See* **EXHIBIT B**.   This conversation highlights a predator keenly aware of his illegal actions and law enforcement.

More specifically, in civil lawsuit, the plaintiff Jane Doe (hereinafter referred to as Minor Victim 2 (MV2)) describes how YUEN had groomed her beginning in 2005 when she was 16.   MV2 also describes how YUEN brought her to his home, the same residence where YUEN was arrested in 2023.   In his home, YUEN engaged in sexual contact with MV2 on numerous occasions in his residence as well as in his vehicle and a hotel in Waikiki.   Law enforcement also interviewed MV2 to confirm this information.

The civil complaint further documents a multitude of instant messages from YUEN to MV2 in or around 2005 and 2006 whereby he incessantly threatened, coerced, pleaded, and guilted MV2 in several attempts to engage in sexual contact with her.

In November 2022, law enforcement interviewed Minor Victim 3 (MV3), who was a victim in the civil lawsuits.   MV3 recalled that when she was 12 years

10

old, sometime in 2002, YUEN took her to his house and turned on a movie for her to watch.   MV3 stated she fell asleep and later awakened only to find YUEN lying next to her, just a few inches from her face.

Moreover, YUEN's use of electronic communications and the internet to carry out his predation on minors is particularly important here.   Indeed, YUEN frequently contacted MV1 and repeatedly asked her to send him sexually explicit images of herself online and via text message, which she did when he would not stop contacting her.   He also used different methods to contact her and obtain sexual gratification via phone sex, images, and videos.   With MV1, he was unsuccessful in his attempts to get her to engage in physical sexual contact with him while she was a minor.   However, he likely was thwarted in this endeavor because she moved to the mainland during her communications with YUEN.

In YUEN's online conversations with both MV1 and MV2, he told both girls that he was not only in contact with MV1 and MV2, but that he was also speaking to other girls that both MV1 and MV2 knew.   In one instance, in MV1's last text message to YUEN in March 2022, she informed him that she was not answering his messages and calls because he kept texting younger girls than her and kept inappropriate pictures of younger girls.

Given these facts, YUEN appears to have had consistent communication with minors and former athletes that he has coached.   Based on the incidents

11

involving MV1 and MV2, YUEN is likely in contact with multiple underage individuals currently unknown to law enforcement and, as such, YUEN is capable of utilizing online tools and technology, as well as smartphones and cellphones to solicit children **beyond** the individual charged in the Complaint.

The fact that YUEN has no criminal history is not a mitigating factor here. It merely places himself in the "heartland" of child pornography defendants.   *See United States v. Turman*, No. CR 18-51-M-DLC, 2018 WL 4690803, at *3 (D. Mont. Sept. 28, 2018) (affirming pretrial detention for a defendant with a release residence and no criminal history and noting "[a] lack of criminal history does not distinguish Turman but merely places him in the 'heartland' of child pornography defendants) (citing *United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (noting typicality of the lack of a criminal history in child pornography defendant characteristics)).

> ### iv.   *The Nature and Seriousness of the Danger to the Community and YUEN's Former Victims Favors Detention.*

YUEN poses a serious and ongoing danger to members of the community were he to be released on bail on any conditions.   Release would pose a danger to his prior victims and any other minors YUEN already knows or could reach via the Internet or phone.   To date, law enforcement has confirmed that YUEN coaches youth club basketball in and around Oahu public parks and other locations under

various changing monikers, such as City High Basketball, Hawaii Storm, and Hawaii Reign.   The changing of these names, as well as changing and closing certain team social media pages to the public around and after the filing of the civil complaints, underscores YUEN's Internet savvy and sophistication in making it appear that these teams are separate and apart from YUEN and are not associated with him.

Given YUEN's demonstrated proclivity for conducting at least a large part of his grooming and criminal activity *online* and the fact that *he is still coaching youth basketball* in direct contact with minors, there are no conditions that can adequately protect the public from him.   YUEN has demonstrated a persistent pattern of pursuing children sexually and harassing his victims, such that no conditions can be fashioned to protect the community.   *See United States v. Salerno*, 481 U.S. 739 (1987) (detention may be ordered where the court finds no condition or combination of conditions could prevent the defendant's continued or future criminal activity); *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir.1990) (observing that release conditions contained "an Achilles' heel ... [where] virtually all of them hinge on the defendant's good faith compliance").

For example, in one of MV1's final text messages to YUEN, she specifically tells him to "[s]top texting me. and stop trying to contact me from different numbers."

13

MV2 similarly explained, during her interview with law enforcement, that when she was a minor, YUEN would text, call, or use someone else to contact MV2.   MV2 also remembered that YUEN would use different people's emails accounts or log into different people's Myspace accounts to try and get ahold of MV2 when she had turned off her AOL instant messenger.

Of particular concern, in this case, YUEN knows his victims and knows them well.   For example, during an interview with law enforcement, MV3 informed she last had contact with YUEN in 2015 or 2016, when she told him to leave her alone.   Despite MV3 not being contacted by YUEN after that exchange, she did notice that YUEN would follow and still view her social media accounts up until the filing of the civil lawsuit.

Any conditions the Court might impose could "be too easily circumvented or manipulated" by someone like YUEN, who has demonstrated that he cannot be trusted to act in good faith or abide by any conditions of release.   *Hir*, 517 F.3d at 1092.   No conditions could prevent YUEN from continuing to contact minors and former victims under his own name or pseudonyms should he be released.   MV3, now a 32-year-old female, strongly believes that if YUEN were to be released from detention, he would find a way to contact and harass victims.

Furthermore, the investigation is ongoing and involves over twenty years of conduct.   The FBI publicly released a hotline for persons, including victims, to

14

contact with information about YUEN's conduct.   The government just recovered multiple electronic devices from YUEN's residence and is beginning to process and review that material to identify additional victims.   Thus, law enforcement has no way to suggest conditions that could be fashioned to prevent against his contact of those unidentified victims (e.g., through a no contact list).   Moreover, *no* condition can adequately monitor his online activity (e.g., access to and use of numerous social media sites and app-based communication methods) or definitively prohibit his access to any electronic devices or phones.   For example, monitoring his phone or banning use of electronic devices would not be sufficient in that he could easily engage in obstructive or further criminal conduct undetectable by pretrial services, such as deleting texts and contacts, surreptitiously using others phones (e.g. his mother's), or obtaining and using burner phones.

Specifically, release under any conditions to his residence with his mother as a third-party custodian would be wholly inadequate and would not protect against the danger YUEN is to the community.   YUEN committed the criminal offense and related activities alleged in the Complaint while living at home with his mother.   Further, there is little doubt that she was aware of the allegations in the civil complaint, yet the instant offense conduct occurred after such allegations became public.   Further, though years ago, YUEN was living in the same

residence with his mother when he allegedly brought multiple minors into his residence and sexually assaulted them there.   Several of the minor females have indicated to law enforcement that they saw YUEN's mother when he brought them to his house and she was aware that he was bringing girls into their residence.

YUEN's actions demonstrate he has a penchant for harassment and intimidation.   Now that YUEN faces a significant period of incarceration, these tendencies are only likely to intensify.   For example, in an interview with law enforcement, MV3 stated YUEN constantly told her and other victims that he would retaliate against them and had connections everywhere.

This information is corroborated by the near-constant harassment YUEN subjected MV2 to during the period of time after she was sexually assaulted by YUEN and she began to withdraw from him and he demanded to know why she was acting in this manner.   MV2 provided to law enforcement a multitude of computer instant messages, believed to be from AOL Instant Messenger chats, during which MV2 was approximately 16 or 17 years old and YUEN was approximately 33 years old.   *See* **EXHIBIT C.**   In one series of chats, dated March 26, 2006, at approximately 7:11pm, YUEN messaged MV2 well over 250 times within one hour.   That amounts to approximately four text messages every minute.   In another series of chats, dated on or about March 23, 2006, YUEN harassed MV2, referencing their sexual encounter, which occurred when MV2 was

16

still a minor, making assertions that he wanted to sexually engage with MV2 again.

### B. YUEN is a Flight Risk.

#### i. *YUEN Faces Substantial Time in Prison.*

Besides the danger he poses to the community, YUEN is a flight risk because he faces substantial prison time.   He faces up to ten years in prison. YUEN does not have a confirmed means of employment, outside of possibly managing family properties and perhaps a trust fund that may have been set up by YUEN's late father, but law enforcement has not been able to confirm YUEN's current employment status.   Furthermore, YUEN appears to know people in other states and is connected to several coaches of mainland basketball teams.   Given his notoriety and the high-profile nature of this case, YUEN faces significant public humiliation and disapproval that makes it less likely he would remain on Oahu.   The potential prison term alone and continuing investigation makes YUEN a flight risk when weighed against the low burden of proof applicable to this prong of the analysis (i.e., preponderance of the evidence).

### IV.   CONCLUSION

For the reasons stated above, the United States of America respectfully requests that his Court grant the motion to detain defendant DWAYNE YUEN, pending trial as both a danger to the community and a flight risk.   No conditions of release could be fashioned to adequately protect the community in this case.

17

DATED:   February 7, 2023, at Honolulu, Hawaii.

Respectfully submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By /s/ Christine Olson
     CHRISTINE OLSON
     REBECCA PERLMUTTER
     Assistant U.S. Attorneys

18

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

**Served via Electronically through CM/ECF to Counsel, including:**

Jacquelyn Esser, Esq.
Counsel for DWAYNE YUEN

**Served via Email:**

Erin Patrick
U.S. Pretrial Services

DATED: February 7, 2023, at Honolulu, Hawaii.

*/s/ Desirai Tolbert*
United States Attorney's Office
District of Hawaii