KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

REBECCA A. PERLMUTTER
Assistant United States Attorney
GWENDELYNN BILLS
Trial Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Fax: (808) 541-2958
Email: Rebecca.Perlmutter@usdoj.gov
Email: Gwendelynn.E.Bills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DWAYNE YUEN,<br><br>Defendant. | CR. NOS. 23-00016-JMS<br>24-00077-JMS<br><br>UNITED STATES' SENTENCING MEMORANDUM; CERTIFICATE OF SERVICE |

# TABLE OF CONTENTS

Page

I.  Yuen's Sentencing Guidelines Are Correctly Calculated .............................. 3

II.  An Upward Variance Reflects the Seriousness of the Offense and the Totality of Yuen's Conduct ............................................................. 8

III.  An Upward Variance Promotes Respect for the Law and Affords Adequate Deterrence ..................................................................... 15

IV.  An Upward Variance Provides Just Punishment ......................................... 19

CONCLUSION ................................................................................. 20

## Table Of Authorities

<u>Cases</u>                                                                                                     <u>Page(s)</u>

*United States v. Daniels*,
   541 F.3d 915 (9th Cir. 2008) .............................................................. 21

*United States v. Morace*,
   594 F.3d 340 (4th Cir. 2010) .............................................................. 21

<u>Rules and Statutes</u>

18 U.S.C. § 1591 ................................................................................. 5, 6

18 U.S.C. § 2259A .............................................................................. 21

18 U.S.C. § 2259B .............................................................................. 21

18 U.S.C. § 3553 ........................................................................ 2, 19, 21

18 U.S.C. § 3359(d) ............................................................................ 21

18 U.S.C. § 3572 ................................................................................ 21

USSG § 2A6.1 ..................................................................................... 4

USSG § 2G1.3 ................................................................................. 3, 7

USSG § 2G2.1 ......................................................................................7

USSG § 2X5.1 ..................................................................................... 4

USSG § 3D1.4 ..................................................................................... 4

USSG § 4B1.5 ..................................................................................... 4

USSG § 5D1.2 ................................................................................... 21

H.R. Rep. No. 107-527 ........................................................................21

Local Criminal Rule 32.2(e) ..................................................................3

<u>UNITED STATES' SENTENCING MEMORANDUM</u>

The United States, by and through the undersigned attorneys, respectfully submits its sentencing memo in the case of *United States v. Dwayne Yuen*.

Dwayne Yuen is a 52 year-old predator. He has exploited and tormented children in Hawaii for almost twenty years. From around 2003, Yuen began coaching girls' basketball in a wide range of settings—both middle school and high school, private and public schools, and private club teams—with youth from Oahu and the Big Island. Since that time, his systematic harassment campaigns and abuse of many athletes that he coached were persistent, deeply traumatic, and life changing for his victims. Yuen was relentless despite all obstacles. He did not stop after multiple minor victims obtained restraining orders against him in 2006. Even after civil lawsuits were filed in April 2020 by five former student-athletes who alleged Yuen engaged in sexual misconduct and assault, he remained undeterred in continuing to contact and solicit sexual conduct with minors and other former players. Until this prosecution, Yuen behaved as if he was untouchable. His conduct stopped *only* because he was arrested and detained in February 2023.

Yuen must be held fully accountable. In December 2024, Yuen pleaded guilty to twelve counts involving ten victims, charging him with sex trafficking a minor, coercing and enticing a minor to engage in sexual contact, production and

trafficking in child pornography, and harassment. Even those twelve counts do not reflect the true scope and impact of Yuen's conduct. The PSR concludes Yuen's guidelines offense level is 41, which corresponds to a term of imprisonment of 324 to 405 months. In fashioning an appropriate sentence, the Court must consider the factors outlined in 18 U.S.C. § 3553(a).[1] The government's sentencing recommendation is guided by those factors and the many aggravating circumstances in this case. Thus, the government recommends an upward variance to 480 months—forty-years' imprisonment. This type and length of sentence is necessary to reflect the nature and extent of Yuen's conduct, account for the many victims, protect the community, and provide just punishment.

---

[1] **(a) Factors To Be Considered in Imposing a Sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

> **(2)** the need for the sentence imposed—

> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> > **(B)** to afford adequate deterrence to criminal conduct;

> > **(C)** to protect the public from further crimes of the defendant; and

> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . .

## I.    Yuen's Sentencing Guidelines Are Correctly Calculated.

The government has reviewed the Final Presentence Report ("PSR")[2] for both cases and submits that it properly calculates Yuen's Sentencing Guidelines range pursuant to the operative United States Sentencing Guidelines ("USSG"). PSR ¶ 20.[3]  In sum, Yuen's Guidelines are calculated as follows:

| Superseding Indictment: Count 1 (Sex Trafficking of a Minor) – USSG § 2G1.3(a) (2005 Guidelines Manual) | |
| --- | --- |
| Base Offense Level | 24 |
| Specific Offense Characteristics:<br>    Minor in the custody, care, or supervisory control of the Defendant<br>    Undue influence of the minor<br>    Use of a computer<br>    Offense involved sexual act or sexual contact | +8 |
| Adjusted Offense Level | 32 |
| **Superseding Indictment: Count 2 (Coercion and Enticement) – USSG § 2G1.3 (2005 Guidelines Manual)** | |
| Base Offense Level | 24 |
| Specific Offense Characteristics:<br>    Minor in the custody, care, or supervisory control of the Defendant<br>    Undue influence of the minor<br>    Use of a computer | +6 |
| Adjusted Offense Level | 30 |

---

[2] Citations to the PSR in this memorandum comport with Local Criminal Rule 32.2(e).

[3] For simplicity, citations to the Court's docket throughout this memorandum are only to the initial case against Yuen, Criminal No. 23-00016-JMS.

| Superseding Indictment: Counts 3 through 5 (Production, Receipt, and Possession of Child Pornography) – USSG § 2G2.1 (2024 Guidelines Manual) | |
|---|---|
| Base Offense Level | 24 |
| Specific Offense Characteristics:  Minor in the custody, care, or supervisory control of the Defendant  Undue influence of the minor  Use of a computer  Offense involved sexual act or sexual contact | +8 |
| Adjusted Offense Level | 32 |
| **Superseding Indictment: Count 6 & Information: Counts 1 through 5 (Harassing Telephone Communications) – USSG § 2A6.1 (2024 Guidelines Manual)[4]** | |
| Offense Level (no applicable adjustments) | 6 |
| **Information: Count 6 (Obscene and Harassing Telephone Communications) – USSG §§ 2X5.1 & 2A6.1 (2024 Guidelines Manual)** | |
| Offense Level (no applicable adjustments) | 12 |

PSR ¶¶ 123–88.

After application of the Chapter 3 Grouping adjustment, additional levels are added to the highest group, resulting in a Combined Adjusted Offense Level of 39. PSR ¶¶ 189–92; USSG § 3D1.4. Yuen receives an additional 5-level upward adjustment pursuant to the Chapter Four enhancement for repeat and dangerous sex offenders against minors. PSR ¶ 193; USSG § 4B1.5(b)(1). After the three-level deduction for acceptance of responsibility, Yuen's Total Offense Level is 41.

---

[4] These counts are all calculated separately but are listed together for the benefit of this summary because they all have identical calculations.

Yuen raises two objections to this calculation. He objects to the application of the undue influence enhancement to Counts 1 and 2 from the Superseding Indictment, and he objects to the use of a computer enhancement of Counts 1 through 5 of the Superseding Indictment. The government adopts the response of the U.S. Probation Office as its own and does not repeat it herein. PSR at pgs. 64–66. The government seeks to clarify one aspect of the response to the first objection. As part of his objection to the undue influence enhancement regarding Count 1 (sex trafficking), Yuen argued that it is "double counting" because the offense of conviction contains an element of use of force, threats of force, fraud, or coercion, and that coercive behavior is already accounted for in the base offense level of 24. Even if Yuen's assertion was true, as the Probation Office correctly responds, that would not be double counting. However, the defendant's assertion is not true. The confusion here stems from a misunderstanding about which version of the statute and Guidelines Manual applies, both of which have been revised since the offense conduct. Yuen was charged with violating the 2005 operative version of 18 U.S.C. § 1591. In operative part, the statute Yuen was charged with violating reads

> **(a)** Whoever knowingly--
>> **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

**(b)** The punishment for an offense under subsection (a) is--

> **(1)** if the offense was effected by force, fraud, or coercion or if the person recruited, enticed, harbored, transported, provided, or obtained had not attained the age of 14 years at the time of such offense, by a fine under this title or imprisonment for any term of years or for life, or both; or
>
> **(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title or imprisonment for not more than 40 years, or both.

18 U.S.C. § 1591 (2005). Yuen was only charged with the penalty provision in subsection (b)(2). ECF No. 31. As a result, no element of the defendant's charged conduct rested on force or coercion.

The Sentencing Guidelines as applied to Yuen similarly do not rely on any force, fraud, or coercion in determining Yuen's base offense level. The current edition of the Guidelines Manual (2024) provides graduated base offense levels based on the penalty provision of conviction. When a defendant is convicted of sex trafficking using force, fraud, or coercion, his base offense level of 34 points is 4-levels higher than if the defendant is convicted of trafficking a minor who is 14 years old or older. USSG § 2G1.3(a)(1)–(2) (2024). No such consideration exists in the Guidelines Manual applied to Yuen.[5] The base offense level for Yuen is 24

---

[5] Of course, if it did, as noted above, that enhancement still would not apply to Yuen, who is only convicted of trafficking a minor 14-years-old or older and is not convicted of the use of force, fraud, or coercion.

because he sex trafficked a minor. There is no double counting as Yuen's coercion was not accounted for in the first instance.

Regarding the use of a computer enhancement for Counts 1 and 2, the government draws attention to when Yuen's exploitation occurred. Yuen does not dispute the applicability of the enhancement in the Guidelines calculation. Rather, he argues the use of a computer enhancement is outdated and cites to a report from 2012. However, the technological landscape in 2012 is leagues different than it was in 2005 and 2006. Indeed, some of the technologies Yuen used are long-viewed as outdated, such as AOL Instant Messenger.

Yuen is also objecting to the enhancement for the conduct in 2020 to 2023 set forth in Counts 3 through 5, which charge the production, receipt, and possession of child pornography. Again, he does not dispute the applicability of the enhancement. Rather, he relies on the same argument described above. The facts underlying these counts demonstrate the significance of this enhancement. At the time of the offenses, Minor Victim 3 was physically removed from under the thumb of Yuen's coaching. She had moved away at seventeen. PSR ¶ 51. Nevertheless, Yuen was able to accomplish her exploitation, which included producing child pornography that he then shared with other victims of this case, solely because he could access her using electronic devices. Accordingly, the

government submits the Sentencing Guidelines are properly calculated in the Final PSR.

## II.    An Upward Variance Reflects the Seriousness of the Offense and the Totality of Yuen's Conduct.

*"[T]his man is a . . . monster. Not the boogie man type like the ones in children's novels. He's the kind of monster that lurks in plain sight. The one that preys on the innocen[ce] of a child." – Minor Victim*[6]

For twenty years, Yuen coached girls' basketball. PSR ¶ 20. Over time, his big personality allowed him to establish a wide reach and connections throughout the Hawaii girls' basketball community, extending even to collegiate programs on the mainland.  At the same time, he used his position to threaten, harass, and sexually violate many of the athletes he coached.

Yuen often began grooming his victims when he first encountered them, some as young as twelve.  As "Coach Dwayne," he gained their trust.  He mostly targeted minors with particular vulnerabilities—those with financial or family stressors and/or those who identified as LGBTQ.  *See, e.g.*, PSR ¶¶ 24, 74–75, 99. Yuen began spending more time with them, giving them rides, providing them meals, and taking them shopping. PSR ¶¶ 24, 39, 72, 86, 99–101. He sought to buy the affection of the children, giving them gifts—personalized basketball shoes,

---

[6] The italicized selected victim quotes in this memorandum are taken from statements appended to the PSR in this case and anonymized here. ECF No. 63-1.

jewelry, money, clothing (including undergarments and lingerie) and electronics—
which was particularly impactful given the vulnerabilities of the victim population
that he targeted. *See, e.g.*, PSR ¶¶ 31, 39, 50 & 58–59, 106. He ingratiated himself
with their parents and guardians, gaining their trust and loyalty, to ensure his
access to their children continued. PSR ¶¶ 24 & 87. Yuen also emphasized the
power he held over these children's futures. He offered to get minors playing time
and open the door to scholarships and collegiate basketball programs. PSR ¶¶ 86 &
108. Once this role of trust was established, Yuen began introducing sexual
conversation to the minors, often starting with discussions about the minors' high
school boyfriends. PSR ¶¶ 38, 104. Yuen normalized the topic of sex with the
children and laid the groundwork for his eventual exploitation.

Once Yuen opened the door to sexual talk, he became vulgar, sexually
explicit, and relentless. He often showed or sent pornography to minors, even
sending images and videos of himself masturbating or engaging in sex acts to these
children. *E.g.*, PSR ¶¶ 39, 54, 59, 104. He also weaponized the abuse of initial
victims to foster the abuse of subsequent victims. He would recount and comment
on his claimed sexual contact with the victims to their teammates and
acquaintances. *E.g.*, PSR ¶¶ 32, 62, 77, 105. In at least three instances, he also
spread nude images of victims to other minors and young adult basketball players.
PSR ¶¶ 62, 91 & 96a.

This all culminated in Yuen's sexual abuse, both in person and virtually of multiple minor victims and other repeated attempts to do so. Yuen's physical grooming and sexual assaults involved isolating victims in his car, at his home, and in hotel rooms. One victim described Yuen engaging in escalating physical contact with her in the early 2000s, ultimately resulting in Yuen repeatedly engaging in coerced sex acts with the victim when she was between 15 and 16 years old, while Yuen was her coach. PSR ¶¶ 24, 27, 36. The victim described not being able to say "no" to Yuen, not just as a result of the grooming detailed above, but also because he threatened her both to ruin her reputation and basketball career, and even threatened physical harm, which is consistent with Yuen's pattern of threats detailed below. PSR ¶¶ 24, 27a. Another victim from the same time period, who Yuen coached, was also 15 to 16 years old when Yuen repeatedly engaged in forcible and coerced sexual activity with her, threatening her reputation and basketball career if she told anyone about the abuse or stopped engaging with him. PSR ¶ 39. He also offered several victims money or other benefits in exchange for sexual acts. For example, Yuen asked one minor victim if she needed money, then paid her first to "talk him through" masturbating, progressing to paying the minor victim to send him sexually explicit images. PSR ¶¶ 59–65. After exerting intense pressure, Yuen had sexual contact with multiple adult victims just after they turned eighteen; he had coached and groomed these victims for years as minors in the

manner described above. *E.g.*, PSR ¶¶ 74, 98. Yuen also bragged about sexual contact and encounters with several other victims. *E.g.*, PSR ¶ 77, 96a. And he pressured other victims to send nude images and engage in live sexual activity over Facetime or similar online platforms. *E.g.*, PSR ¶¶ 61, 74, 96a, 105.

As those examples show, if Yuen's grooming approach did not work or if victims eventually attempted to remove themselves from his abuse, his tactics had a darker side, as well. He threatened and harassed the victims, ramping up the frequency and volume of his conduct. Yuen threatened social ostracization and ruined reputations by spreading sexual rumors about them. PSR ¶¶ 27a, 34, 39–41, 95. For teens, the erosion of social status and reputation can have disastrous consequences. For many of the athletes that Yuen coached, basketball was their entire world. Yuen understood this and threatened to limit playing time, destroy their basketball careers, impugn their reputations with other coaches, and/or get their collegiate scholarships revoked.

Yuen also levied truly chilling threats. This can be seen in the messages he sent to one minor victim when she was 16 to 17 years old. Yuen demanded she continue to engage in sex acts with him, when she refused, Yuen sent barrages of threatening messages. PSR ¶¶ 40–41. These threats included:

- "u really think I cannot ruing ur social life . . . u can become a ghost in ur school."

- "u really think u can keep me from gettign [sic] what i want if male and female adults cant stop me what make u think u can i am so hooked up u have no idea i could make one call and u would disappear u want to see?"

- "U WANT TO DIE? I AM SERIOUS? HOW DO U WANT IT DONE? RUN OVER RAPED? DROWNED? CONCRETE BOOTS? LEFT IN THE BUSHES? BEATEN? U CHOOSE?"

Yuen even followed through on some of his threats. For example, one of the victims of Yuen's harassment tried to distance herself from him when she went to college on the mainland. Yuen used dozens of anonymous numbers to contact her, called her family members and friends, and showed up uninvited at her home in Hawaii while she hid from him. PSR ¶¶ 93–96. To intimidate and control her for sexual favors, Yuen fabricated messages reflecting negative conversations with himself and her collegiate coach. PSR ¶ 96a. These messages were forged to make the victim believe that her coach had concerns about the victim's performance and commitment to basketball and was consulting with Yuen on these matters. *Id.*

Yuen subjected at least two of the minor victims to physical violence. For example, to control and coerce a minor victim, particularly when she rejected or tried to avoid his sexual advances, Yuen threatened, blackmailed, and physically assaulted her. He choked her. PSR ¶ 34. "In a fit of rage," Yuen threatened that he could "snap her like a twig."[7] On one occasion, after she turned eighteen, Yuen

---

[7] *See* PSR ¶¶ 21, 23 (civil complaint filing).

showed up at her home when she failed to respond to his messages.[8]  She was

scared.  To avoid him, she ran to her vehicle, but Yuen grabbed and held her.  She

struggled and swung at him to get loose.  She ran to her car and drove away.  Yuen

chased her in his car for miles until he observed law enforcement. When the police

stopped him, he claimed that she was the aggressor and had punched him in the

face.

On another occasion, Yuen located another minor victim—whom he had

forced into sexual contact—at the beach with another player.  At the time, she was

still a minor and being coached by Yuen.  He physically harassed her by punching

the passenger window of the car where she was seated and threatening her to get

out of the car. *See* bates #YUEN_007984-85.  She described that it seemed like

Yuen was trying to attack her. *Id.*

Yuen understood the power dynamic he held as a coach and knew how to

groom, manipulate, and break down the defenses of the minors that he preyed

upon.  The names and faces of the victims changed, but his tactics were the same

in 2023 as they were in 2005.  He was obsessive—sending the victims thousands

of text messages and calling nonstop, sometimes dozens of times or more in one

day. PSR ¶¶ 68, 75, 80, 82, 88–91. They would block his number, but he would

---

[8] This incident is described in PSR ¶ 27a. *See also* bates #YUEN_009061-62.

use different numbers to continue his harassment. PSR ¶¶ 68, 75, 82, 91, 93. At times, he used the names of other victims to conceal his identity in his barrage of harassing messages to victims, this included the messages to Victim 4 in PSR ¶ 69. *See* PSR ¶¶ 69, 80, 83. Victim 4 said the continuous text messages from unknown numbers made her think she had a stalker and was being watched. PSR ¶ 68. Victim 8 explained that Yuen was so overbearing that it felt like she couldn't breathe. Victim 9 provided over 70 different phone numbers that Yuen had contacted her, despite her attempts to block him and repeatedly telling him to stop, sometimes messaging her a hundred times a day. *See, e.g.*, bates #YUEN_009306, 9378-79. Minor Victim 1 described that she felt like she couldn't escape Yuen. PSR ¶ 37a. Yuen threatened to follow a minor victim to college on the mainland and then tracked her down and harassed her for years into adulthood. *Id.* Those threats were so debilitating that they permanently changed the course of her life. *Id.* For those that Yuen targeted, only responding and doing exactly what he wanted would bring any reprieve.

The sentence imposed in this case must address reflect the duration, scope, and gravity of the Yuen's conduct. The nature and circumstances of this offense show a pattern of predation stretching decades, including physical, sexual, and psychological abuse, ultimately impacting the lives of many of the girls he was entrusted with.

### III. An Upward Variance Promotes Respect for the Law and Affords Adequate Deterrence.

*"This is not someone who made an error in judgment. This is someone who chose again and again to violate trust, to exploit his position, and to hurt others for his own gratification. His behavior has shown [a] consistent pattern of manipulation and deceit. A strong sentence is essential not only to hold this offender accountable but also to serve as a clear deterrent to others who might consider similar actions."— Minor Victim*

In fashioning an appropriate sentence, the Court must also consider that there were multiple points in the two decades of offending that Yuen could have stopped his exploitation but did not. Only incarceration has stopped Yuen. In 2004, Yuen was fired from his position at a private school where he was a basketball coach.[9] PSR ¶ 20. The school determined that, among other concerns, he created an offensive educational environment, including by requesting sexual contact and engaging in appropriate gift-giving. *Id.* Yuen was fired as an official girls' basketball coach and prohibited from employment or volunteering at the school, but he continued to assist and have contact with the players for over a year. *Id.* Over a year after the initial prohibition, in December 2005, Yuen was formally served with a trespass notice that prohibited him from being involved in sports training or personal lives of any of the students or being directly or indirectly

---

[9] To demonstrate how long Yuen's conduct occurred, neither Victim 4 nor Victim 6—both of whom were adults when Yuen is charged with harassing them—were born when the school first substantiated the misconduct allegations against Yuen and removed him from his position.

involved with any activities at the school. *Id.* The conduct described in Count 1 and Count 2 of the Superseding Indictment occurred within that year; both victims were students of that school at the time. Superseding Indictment, ECF No. 31; PSR ¶¶ 23, 39. Despite the trespass notice, Yuen continued to attend games and interact with the girls basketball players off campus. PSR ¶ 20.

In 2006, a group of minor victims, all high school student-athletes at a private school where Yuen coached, reported him to the school, filed police reports, and lodged three-year-long temporary restraining orders (TROs) against him. PSR ¶¶ 33, 42. He nonetheless kept contact with the athletes in numerous other ways, meeting them just off campus and calling and messaging them repeatedly. Yuen reappeared on campus in 2017 to engage with the girls basketball players. He then received yearly trespass notices in 2017, 2018, and 2019. PSR ¶ 20.

Rather than take the opportunity presented to him to reform, seek rehabilitation, and cease contact with young female athletes, Yuen vocally denied any wrongdoing and falsely painted the minor victims as liars. In the meantime, he pursued his teaching license and was employed as a teacher at elementary schools from 2007 to 2018. PSR ¶ 235. For decades, Yuen continued to coach or assist with girls' basketball at other schools and club teams. He targeted new, young victims. The only thing that appeared to change in Yuen's modus opperandi was

that after grooming and pressuring minors for years, he waited to engage in hands on sexual contact until shortly before or upon their eighteenth birthdays. Rumors about Yuen's misconduct involving minors rippled through the athletic community for years. Yuen repeatedly denied and blamed the victims. Over time, he moved his coaching to other areas of the community, allowing him access to children and families who were less familiar with his history and even more in need of the financial assistance a collegiate basketball scholarship could bring.

In April 2020, five victims filed civil lawsuits against Yuen for sexual misconduct and assault. PSR ¶ 21. The allegations against Yuen in those lawsuits are in the public record, but the settlements are not. *Id.* Even after the lawsuits were filed and litigated, Yuen was not deterred. When some victims or others asked Yuen about the prior allegations, Yuen again showed no remorse, instead claiming the victims were lying. Yuen did admit to sexual activity with Minor Victim 1 to another victim but claimed that it was not victimization. PSR ¶ 88. He told another victim that he was actually "dating" his prior victim. PSR ¶ 57.

Even being held accountable in a court of law did not stop Yuen. Counts 3 through 6 of the Superseding Indictment and all six counts of the Information post-date the filing of the civil lawsuit. PSR ¶ 4–15. This includes the production of and receipt of child pornography involving Minor Victim 3. Yuen met Minor Victim 3 when she was 14 years old and he was her basketball coach. PSR ¶ 50. He began

sexually exploiting her when she was 17 years old, after the lawsuits had been filed.  In one text exchange, Minor Victim 3 tells him "im still underage and you will get in trouble."  Yuen continued to harass her after that time, despite her pleas to stop.  Yuen was also sending harassing messages to at least three victims and others up to the date of his arrest in this case. *See, e.g.*, PSR ¶ 75.

Even now, there is no indication that Yuen recognizes the significance and impact of his conduct or plans to reform. ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████ Disturbingly, even after pleading guilty to a range of sexual exploitation of minor and harassment charges that were enabled by his role as a youth basketball coach, Yuen now claims that he wants to pursue a PhD in Education. PSR ¶ 231.

Yuen exploited his position of authority and power over these young athletes.  He knew the influence he had over their lives and future.  When victims repeatedly begged him to stop, he lashed out and doubled down.  Yuen deceived the parents and guardians of these victims who trusted him to travel overnight and

spend time alone with their children.  The sentence must serve a specific deterrence purpose and finally convince Yuen to stop exploiting Hawaii's youth. *See* 18 U.S.C. § 3553(a)(2)(B).  Given that only incapacitation has served this goal so far, a significant sentence of incarceration will also serve the goal of protecting the public from further crimes of Yuen. *See* 18 U.S.C. § 3553(a)(2)(C).  Yuen's sentence must also send a message to others entrusted with the care and supervision of children that the consequences of this egregious abuse of power are severe. *See* 18 U.S.C. § 3553(a)(2)(B).

## IV.    An Upward Variance Provides Just Punishment.

*"Till this very day I am still dealing with the trauma and this will forever be a part of me even if I don't want it to be I can't erase it."— Victim*

The scope of pain and destruction Yuen caused to young girls and women in the community cannot be understated.  He created a culture of harassment and painful silence not just to the girls that he directly targeted, but also their teammates, friends, and family.  Yuen crushed attainable dreams and stole the light, innocence, and trust out of too many children.  The letters from victims and community members provided to this Court speak to the pain he has caused.  For example, the victims have described this impact:

- "The marks that he left are embedded deep into my core. The grooming, the manipulation, the threats, the physical, emotional and mental damage this man has caused and has gotten away with has been paralyzing. Anything and everything that I had thought to be normal was compromised. Anxious and in a panic state, everyday

tasks were spent looking over my shoulder . . . I questioned my own existence and self worth." PSR Attachment, ECF No. 63-1. p. 2–3.

- "There may be no physical scars, the emotional wounds are deep, long-lasting, and often invisible to the outside world. They don't fade with time, and they don't go away. . . . I've spent years trying to heal, to feel normal again, and to reclaim the parts of me that were lost. But the truth is, I will never the same." *Id.* at p. 4.

- "I hope whoever reads this letter can grasp the fact that the defendant has damaged me for life. . . . As a minor, my brain wasn't developed enough to realize the signs of being "groomed" or being used for the disgusting behavior Dwayne had been doing. But he knew exactly what he was doing . . . This tragic time in my life has 100% affected my mental health . . . Until this very day I deal with severe anxiety, depression, and insecurities that now bleed into every relationship I encounter." *Id.* at p. 5.

- "[Yuen] made me believe that fearing your coach, to a point where you were scared they might not believe you or might rip away resources or attention from you, was normal. It was not normal . . . . Because of you, I am no longer carefree in this world. Because of you, I was filled with anger and guilt for a very long time for even allowing you to have access to the things I keep so close to my heart." *See* Govts Supp. Sentencing Filing (under seal).

The slow rebuilding of trust and safety that must happen throughout the Hawaiian youth basketball community is ongoing. The healing of the deep wounds left by Yuen is due mostly to the strength and resiliency of the victims. Many of these women have bravely chosen to speak their truth, support each other, and ensure that Yuen is held accountable and can never hurt another person.

## CONCLUSION

For all these reasons, the government recommends a forty-year prison term. The government further recommends that the defendant be sentenced to a lifetime

term of supervised release.[10] Additionally, because there are no eligible victims seeking restitution, the government recommends the defendant be ordered to pay a special assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, which provides that all assessments collected will be deposited into the Child Pornography Victims Reserve, which provides monetary assistance to victims of child pornography trafficking offenses. 18 U.S.C. §§ 2259A(a), 3359(d), & 2259B.[11]

\\

\\

\\

---

[10] Notably, the Sentencing Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement). The life term recommendation contained in Section 5D1.2(b) is supported by evidence that recidivism rates for sex offenders do not appreciably decline as offenders age. *See* H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate, and thus directly inserted such a recommendation into the Guidelines. *See id*. Together, 5D1.2(b) and § 3583(k), "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quoting *United States v. Daniels*, 541 F.3d 915, 923 (9th Cir. 2008)).

[11] In determining what amount to assess, the Court must consider the §3553(a) factors, as well as the factors in § 3572, which include the Defendant's earning capacity; whether restitution is ordered; and the expected costs to the government of imprisonment, supervised release, or probation.

DATED:  August 7, 2025, at Honolulu, Hawaii.

Respectfully Submitted,

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

By */s/ Rebecca A. Perlmutter*

REBECCA A. PERLMUTTER
Assistant U.S. Attorney
GWENDELYNN BILLS
Trial Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at the last known address:

**<u>Served via ECF and Sealed Documents by Certified Mail and Email:</u>**

Alen Kaneshiro, Esq., Attorney for Defendant

> Law Office of Alen Kaneshiro
> 841 Bishop Street
> Suite 2201
> Honolulu, HI 96813
> Email: alen@kaneshirolaw.com

Emailed to U.S. Probation Office, Sara Neiling, Sara_Nieling@hip.uscourts.gov

DATED: August 8, 2025, at Honolulu, Hawaii.

*/s/ Rebecca A. Perlmutter*
Rebecca A. Perlmutter
United States Attorney's Office
District of Hawaii
